# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00571-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00578-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00583-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00584-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

Table of Contents .................................................................................................................................... ii

Table of Authorities ............................................................................................................................... iii

Exhibits .................................................................................................................................................. iv

Abbreviations .......................................................................................................................................... v

I.      U.S. PATENT NO. 7,777,728 (Case No. 6:20-cv-00583-ADA) ........................................ 1

      A.    "tap direction" (Claims 1, 11, 16) ............................................................................. 1

II.     U.S. PATENT NO. 9,335,825 (Case No. 6:20-cv-00578-ADA) ........................................ 3

      A.    "continuous wave doppler radar" (Claims 1 and 19) ................................................ 3

      B.    "at least one memory and the computer program code are configured, with the at least one processor, to cause the apparatus to at least: detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus" (Claim 1) ................................................. 5

## TABLE OF AUTHORITIES

**Cases**

*Dyfan, LLC v. Target Corp.*,
 No. 6:20-cv-00580-ADA, Dkt. 34 (W.D. Tex. Nov. 24, 2020) .................................................. 5

*International Visual Corp. v. Crown Metal Mfg. Co., Inc.*,
 991 F.2d 768 (Fed. Cir. 1993) ................................................................................................... 3

*LG Electronics, Inc. v. Bizcom Electronics, Inc.*,
 453 F.3d 1364 (Fed. Cir. 2006) ................................................................................................. 5

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................ 2, 4

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
 948 F.3d 1342 (Fed. Cir. 2020) ................................................................................................. 5

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
 927 F.2d 1565 (Fed.Cir.1991) ................................................................................................... 3

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
 775 F.2d 1107 (Fed.Cir.1985) ................................................................................................... 3

*Thorner v. Sony Computer Entm't Am. LLC*,
 669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................ 1, 2

*Zeroclick, LLC v. Apple Inc.*,
 891 F.3d 1003 (Fed. Cir. 2018) ............................................................................................ 5, 6

**EXHIBITS**

| Exhibit | Description |
|---|---|
| A | Wikipedia, Continuous Wave Radar, https://web.archive.org/web/20120418124039/http://en.wikipedia.org:80/wiki/Continuous-wave_radar (archived Apr. 18, 2012) |
| B | Federation of American Scientists, ES310: Introduction to Naval Weapons Engineering Course Syllabus, Lesson 10: Continuous Wave Radar, https://web.archive.org/web/20091227095356/https://fas.org/man/dod-101/navy/docs/es310/cwradar/cwradar.htm (archived Dec. 27, 2009) |

## ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Br. | Plaintiff's Opening Claim Construction Brief |
| POSITA | person of ordinary skill in the art |
| Resp. | Google's Responsive Claim Construction Brief |
| '728 patent | U.S. Pat. No. 7,777,728 |
| '825 patent | U.S. Pat. No. 9,335,825 |

I.      U.S. PATENT NO. 7,777,728 (CASE NO. 6:20-CV-00583-ADA)

A.      "tap direction" (Claims 1, 11, 16)

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | tap direction that extends between the first tap position and a second tap position |

Before addressing Google's erroneous arguments in the numbered paragraphs below, WSOU notes that Google fails to allege either of the recognized exceptions to plain and ordinary meaning—lexicography or disavowal. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Accordingly, the plain and ordinary meaning of "tap direction" should stand and no construction is needed.

***First,*** as a threshold matter, Google is wrong to invoke *O2 Micro* and claim that "reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." Resp. at 1 (quoting *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)). Google's construction of "tap direction" includes the ***very same*** term in its proposed construction. By force of logic, Google tacitly concedes that the term "tap direction" has a plain and ordinary meaning by using that very same term verbatim in its proposed construction.

***Second***, with respect to the claims, Google errs by asserting that "WSOU's construction would . . . read the word 'tap' out of the claim[s]." Resp. at 2. Google ignores the surrounding claim language. Claim 1 recites "a tap direction that extends between the first position and a second position." Both "first position" and "second position" are expressly referenced in claim 1, *i.e.*, "detecting the ***touch*** of a first key on the touch sensitive display at a first position" and a "second position is the position of a previously detected ***touch*** of a second key of the touch sensitive display." Independent claim 11 recites similar language. The claims lack the limitation that Google attempts to impose—*i.e.*, that "'tap' mean[s] a press-down followed by a lift-up in the same location." Resp. at 3. Rather, as evident by the claim language itself, the "***tap*** direction" is dependent on the detected "***touch[es]***" of the touch sensitive display. WSOU's construction thus does not read the word "tap" out of the claims as Google contends.

1

***Third***, Google erroneously reads the specification as "confirm[ing] that the patentee understood 'tapping' to mean tapping, that is, a press-down followed by a lift-up in the same location." Resp. at 2. To support its erroneous reading, Google claims that the specification reference to "pointing/tapping/dragging with a pointer" confirms that "pointing," tapping," and "dragging" are (using Google's own words) "***different actions***." *See id.* Google ignores the proper reading that all three terms are not mutually exclusive alternatives, but rather interrelated terms that can overlap. For instance, a user may "point" to something and that may also be understood to be a "tap." "Dragging" is also interrelated to "tapping" and "pointing." A "dragging" operation first starts with a "point" or a "tap," and then the cursor is slid over the touch screen. Based on this proper understanding of the word "tap direction" in the claims, the Applicant did not give up the "pointing" and "dragging" operations as Google claims. Resp. at 2.

***Fourth***, Google also wrongly relies on the specification's description where the user "lifts and moves the stylus along a path 162, and presses down the stylus at a new position 163." Resp. at 3 (quoting '728 patent at 7:12-17). But Google fails to note the language it quotes originates from a paragraph qualifying that the description is merely "[t]o illustrate the method" and also as "an example." '728 patent at 7:10-11. Thus, Google commits the "cardinal sin" of importing limitations from the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (en banc). Nor was this a "clear and unequivocal disavowal" of the concepts of "pointing" and "dragging" described in the specification. *Thorner*, 669 F.3d at 1366.[1]

***Fifth***, Google's reliance on a purported commercial embodiment of the '728 patent is flawed both factually and legally. On the facts, Google provides ***no*** evidence that links the purported commercial embodiment (the Nokia N770) with the '728 patent. See Resp. at 3. The '728 patent lacks any reference to the Nokia N770 product, and there is not even any recognition in the patent that a commercial embodiment existed. Google's ***only*** basis is to compare figures of the '728 patent

---

[1] The term "pointing/tapping/dragging" is described as part of the "embodiments of the ***present invention***." *See id.* at 4:54-55 (referring to "pointing/tapping/dragging" as being illustrated in FIG. 1); *id.* at 3:54-61 (describing FIG. 1 generally as "[e]mbodiments of the present invention" and specifically as a view of "one embodiment").

2

and purported depictions of the Nokia N770 product. *See id.* (citing Ex. 2 and Ex. 1). Based on this comparison (unsupported by any testimony), Google concludes that the '728 patent "depicts" the Nokia N770 device. Google also lacks any evidence for its statement that "Nokia released [the N770 device] shortly before" it filed the application" for the '728 patent. *See id.* Google's attempt to link purported commercial embodiment to the patent fails to acknowledge the possibility that Nokia may have directed its patent to subject matter that was never commercialized or even made public. Even if Google could establish that the Nokia N770 is a commercial embodiment of the '728 patent (for instance, if the specification expressly stated so or if Google provided actual evidence), it would be improper to consider the commercial embodiment when construing the claim term. *International Visual Corp. v. Crown Metal Mfg. Co., Inc.*, 991 F.2d 768, 772 (Fed. Cir. 1993) (reversing summary judgment of no literal infringement for error in claim construction where district erroneously relied upon patentee's commercial embodiment to construe claim limitation).[2]

## II.   U.S. PATENT NO. 9,335,825 (CASE NO. 6:20-CV-00578-ADA)

### A.   "continuous wave doppler radar" (Claims 1 and 19)

| WSOU's Proposed Construction | Google's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a Doppler radar that emits an uninterrupted electromagnetic signal |

By using the term "Doppler radar" in its construction, Google does not dispute that the term "doppler radar" has a plain and ordinary meaning. *See* Br. at 6; *see also* Resp. at 4. Nor does Google dispute that the term "continuous wave" would have a plain and ordinary meaning to a POSITA. *See* Resp. at 4-5. And the parties also agree that the patent discloses two types of doppler radar

---

[2] Google also errs by construing the claims in light of the accused device. Google asks the Court to consider WSOU's accusations against Google's glide typing in the accused instrumentalities. *See* Resp. at 2. But "[a] claim is construed in the light of the claim language ... ***not*** in light of the accused device." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed.Cir.1985) (en banc). Th only exception to the *SRI* is when that accused products can be considered to "focus on the construction of only the disputed elements or limitations of the claims." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed.Cir.1991). Here, this exception does not apply as the parties have already identified the term "tap direction" as being in dispute.

detectors (continuous wave and pulsed) but that the claims only recite "continuous wave." *See* Br. at 6; Resp. at 4-5. The only dispute is whether Google should be allowed to replace the claim language "continuous wave" with "emit[ing] an ***uninterrupted*** electromagnetic signal."

Google, however, provides no evidence that a POSITA would understand "continuous wave" to be the same as "emit[ing] an ***uninterrupted*** electromagnetic signal." As WSOU noted, both the specification and claims lack any reference to the word "uninterrupted" or "interrupted" (or any form of those words). Br. at 6. The only evidence Google cites to support that the word "continuous" means "uninterrupted" is a general-purpose dictionary. Resp. at 4 (citing Ex. 4). But there is no indication in Google's general-purpose dictionary that the definition was intended to apply to the context of radar waves or even the broader concept of electronic magnetic waves. Rather, the dictionary definition itself has a "[u]sage" note which refers to its common lay understanding. Ex. 4 at 125 ("The coast is continually pounded by storms. The external flame burns continuously."). Google's "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *See Phillips*, 415 F.3d at 1321. Google inability to cite any technical treatises or technical dictionaries to support its "uninterrupted" position is indicative that it could find no such support in the technical literature.

Google's grafting of the word "uninterrupted" from a general dictionary into the construction creates a problem relating to clarity. As noted, if the Court were to adopt Google's construction, it could be misapplied to carve out one particular type of "continuous wave" doppler radar that is described in the specification—namely, the "Frequency Modulated Continuous Wave" (FMCW) where the "time signature" may have a "period variation in frequency." *Id.* at 4:33-36 ("The time signature may, for example, be … a periodic variation in frequency (Frequency Modulated Continuous wave)."). Because Google has pointed to no evidence that a POSITA would even understand "uninterrupted" in the context of "continuous wave," it might be misapplied as suggesting that frequency modulation as "interrupts" an emitted signal, thus carving out FMCW from the broader category of "continuous wave doppler radar."

4

> **B.**     **"at least one memory and the computer program code are configured, with the at least one processor, to cause the apparatus to at least: detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus" (Claim 1)**

Google's approach effectively treats "processor," "memory," and "computer program code" as nonce words, which can operate as substitutes for "means" and bring the disputed claim limitations within the ambit of § 112, ¶ 6. On analogous claims to the ones here, the Federal Circuit found such an approach "erroneous" for three related reasons. *See Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018).³

***First***, Google argues that claim 1 does not "convey any meaningful structure." Resp. at 7; *see also id.* (referring to "detailed functional tasks recited in the body of the claim"). But "the mere fact that the disputed limitations incorporate functional language does not automatically convert the words into means for performing such functions." *See Zeroclick*, 891 F.3d at 1008; *see also LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1372 (Fed. Cir. 2006) (the presumption was not overcome because the "claim itself provides sufficient structure, namely 'a CPU and a partitioned memory system,' for performing the stated function, 'controlling the communication unit.'").⁴

***Second***, Google cherry picks portions of the specification to portray the processor, memory, and computer program code as "black-box placeholders." Resp. at 7. As an initial matter, Google completely ignores portions of specification that describe conventional structure. The specification describes "processor 20 may . . . comprise an output interface via which data and/or commands are output by the processor 20 and an input interface via which data and/or commands are input to the

---

³ In *Zeroclick*, the Federal Circuit found A claim not subject to § 112, ¶ 6 that recited "A device …. comprising a processor …. executable user interface code stored in a memory connected to the processor … [and] the user interface code executable by the processor." *Id.* at 1006. The analogous structure of the claims here makes *Zeroclick* a better guide than *Dyfan, LLC v. Target Corp.*, No. 6:20-cv-00580-ADA, Dkt. 34 (W.D. Tex. Nov. 24, 2020).

⁴ Google wrongly suggests that the Court should not rely on the *LG* case because it is "pre-*Williamson*." Resp. at 7-8. The Federal Circuit, however, has expressly relied on the same proposition cited by WSOU in post-*Williamson* cases. *E.g., Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020) (citing *LG*, 453 F.3d at 1372).

processor 20." '825 patent at 5:22-23. The memory 22 is clearly described as structural because it "may be integrated/removable." *Id.* at 5:45-47. The "processor20 by reading the memory 22 is able to load and execute the computer program 24, 26." *Id.* at 5:33-34. A POSITA would reasonably discern from the claim language that the terms are not used as black-box recitations of structure but rather as specific references to conventional components. Accordingly, Google's "analysis [is] removed the terms from their context, which otherwise strongly suggests the plain and ordinary meaning of the terms. *See Zeroclick*, 891 F.3d at 1008.

**Third**, Google has also made no showing that compels the conclusion that the conventional structures was used a substitute for "means." *See Zeroclick*, 891 F.3d at 1009 ("The district court thus erred by effectively treating "program" and "user interface code" as nonce words and concluding in turn that the claims recited means-plus-function limitations.").

**Finally**, with respect to the second step of the means-plus-function inquiry, the Court need not even go there as there is sufficient structure as noted above. In the event it does, Google ignores the structure disclosed in the specification. The processor, as noted above, includes "output interface via which data and/or commands are output by the processor 20 and an input interface via which data and/or commands are input to the processor 20." '825 patent at 5:20-23. Hardly the "empty rectangle" in Google's depiction. Resp. at 8. Moreover, even if they lacked the detail Google claims, the processor, memory, and computer program code themselves would all constitute corresponding structure. With respect to the algorithm, the specification specifically describes an "external event, such as an alarm, alert or other event may enable the controller 14," and correspondingly when the "enabled controller then enables the radio transmitter, radio receiver and gesture detector." *Id.* at 8:40-43. The specification also describes various exemplary scenarios where there is a detection of an application (e.g., an incoming telephone call, an alarm alert, or when the user activates a remote control mode) being started and the "controller turns on the radar." *Id.* at 8:51-56; 8:62-67; 9:5-11.[5]

---

[5] Google asserts that WSOU has "waived" identifying structure and algorithm in the alternative. Resp. at 8 (citing *First-Class Monitoring LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 469 (E.D. Tex. 2019). This case is inapposite and dealt with briefing in an *Alice* motion, not *Markman*. The *Robert Bosch* case is also inapposite as it dealt with waiver during an appeal.

Dated: February 26, 2021          Respectfully submitted,

By:    */s/ Ryan Loveless*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeffrey Huang
Brian M. Koide
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com
Brian@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## **CERTIFICATE OF SERVICE**

    A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on February 26, 2021.

                               */s/ James L. Etheridge*

                               James L. Etheridge