# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a, BRAZOS LICENSING AND DEVELOPMENT § § § § § § | |
| § | Civil Case No. 6:20-cv-571-ADA |
| § | Civil Case No. 6:20-cv-578-ADA |
| *Plaintiff*, § | Civil Case No. 6:20-cv-583-ADA |
| v. § | Civil Case No. 6:20-cv-584-ADA |
| § | |
| GOOGLE LLC, § | JURY TRIAL DEMANDED |
| § | |
| *Defendant.* § | |
| _____ § | |

## SUR-REPLY IN SUPPORT OF DEFENDANT
## GOOGLE LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aristocrat Techs. Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008)..................................................................................6

*Blackboard, Inc. v. Desire2Learn, Inc.*,
   574 F.3d 1371 (Fed. Cir. 2009)..................................................................................6

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH*,
   224 F.3d 1308 (Fed. Cir. 2000)..................................................................................1

*CollegeNET, Inc. v. MarketLinx, Inc.*,
   Case No. 9-544, 2010 WL 11566364 (W.D. Tex. Sept. 10, 2010).......................3, 4

*Egenera, Inc. v. Cisco Sys., Inc.*,
   972 F.3d 1367 (Fed. Cir. 2020)...............................................................................5, 6

*International Visual Corp. v. Crown Metal Mfg. Co.*,
   991 F.2d 768 (Fed. Cir. 1993)....................................................................................2

*Nystrom v. TREX Co.*,
   424 F.3d 1136 (Fed. Cir. 2005)..................................................................................3

*Rain Comp., Inc. v. Samsung Elecs. Am., Inc.*,
   2021 WL 786361 (Fed. Cir. Mar. 2, 2021)................................................................5

*Robert Bosch, LLC v. Snap-On Inc.*,
   769 F.3d 1094 (Fed. Cir. 2014)..................................................................................6

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012)..................................................................................3

*Wang Labs., Inc. v. Am. Online, Inc.*,
   197 F.3d 1377 (Fed. Cir. 1999)..................................................................................2

*WSOU Invs. LLC v. Microsoft Corp.*,
   Case No. 20-454, Dkt. 49 (W.D. Tex. Jan. 8, 2021)..................................................3

*Zeroclick, LLC v. Apple Inc.*,
   891 F.3d 1003 (Fed. Cir. 2018)..................................................................................6

- ii -

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| WSOU | Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development |
| Google | Defendant Google LLC |
| '728 patent | U.S. Patent No. 7,777,728 |
| '825 patent | U.S. Patent No. 9,335,825 |
| POSITA | Person Of Ordinary Skill In The Art |

*\* Emphasis added unless indicated otherwise.*

*\*\* For the Court's convenience, Google cites to WSOU's opening brief, Google's responsive brief, and WSOU's reply brief by referring to the briefs and exhibits filed in Civil Case No. 6:20-cv-578-ADA (which is the same for all of the above-captioned cases) and to the pagination generated by CM/ECF (at the top of the page) rather than the pagination at the bottom of the page.*

I.      U.S. PATENT NO. 7,777,728 (CASE NO. 6:20-CV-583-ADA)

A.      "tap direction" (claims 1, 11, 16)

| Google's Construction | WSOU's Construction |
|---|---|
| tap direction that extends between the first tap position and a second tap position | plain and ordinary meaning |

The question before the Court is whether a "tap direction" is a direction between two taps (as Google contends), or a direction between two touches (as WSOU contends).  Rather than argue this question on the merits, however, WSOU attempts a two-step shuffle:  first assuming without evidence that its interpretation of "tap direction" is the plain and ordinary meaning, and then asking the Court to adopt "plain and ordinary meaning" as the construction.  Both steps fail: the Court should not find a term to have its plain and ordinary meaning where, as here, the parties dispute that meaning; and if there *is* a plain and ordinary meaning of "tap direction," it is a direction between two taps, not a direction between two touches.

WSOU argues that its between-two-touches construction "does not read the word 'tap' out of the claims," (Dkt. 36 at 6), but its brief confirms the opposite.  WSOU claims that because the word "touch" appears elsewhere in the claims, "as evident by the claim language itself, the '***tap*** direction' is dependent on the detected '***touch[es]***' of the touch sensitive display," and "WSOU's construction thus does not read the word 'tap' out of the claims as Google contends."  (*Id.*)  But WSOU's argument asks the Court to construe "tap" to mean "touch"—the definition of reading "tap" out of the claims.  The patentee used "tap" instead of "touch" in the phrase "tap direction"—and the plain and ordinary meaning of "tap" is a press-down followed by a lift-up in the same location.  "In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings." *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).  The Court should not construe

"tap direction" to require no tapping at all.

WSOU claims that "Google commits the 'cardinal sin' of importing limitations from the specification" by quoting language from what WSOU calls "a paragraph qualifying that the description is merely '[t]o illustrate the method' and also as 'an example.'" (Dkt. 36 at 7.) But WSOU misstates Google's argument, and its selective quotation misstates the specification. Columns 7-8 and accompanying Figure 9 are the specification's *only* discussion of a user's interaction with the claimed invention, and the *only* discussion of its specifics. (Ex. 1 at 7:1 to 8:52, Fig. 9.) This portion of the specification provides "an example," but it is not an example *embodiment* but an example of *text input* to the single embodiment described in the specification. *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999) ("claims were correctly interpreted as limited" to the "only embodiment described in the '669 patent specification").

Seeking to avoid the contemporaneous Nokia manual confirming that "tap" means "tap," WSOU claims that "[t]he '728 patent lacks any reference to the Nokia N770 product"—ignoring the picture of the N770 in the '728 specification. (Dkt. 36 at 7-8; *compare* Ex. 2 at 2 *with* Ex. 1 at Fig. 6; *see also* Ex. 1 at Fig. 1-3, 7-9b.) WSOU also argues that "it would be improper to consider the commercial embodiment when construing the claim term," (Dkt. 36 at 8 (citing *International Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993))), but WSOU again misstates Google's argument. Google did not ask the Court to consider the limitations of the N770 itself, but rather patentee Nokia's understanding of the term "tap" set forth in the contemporaneous N770 manual. Even if the N770 were unrelated to the '728 patent, its manual would still demonstrate patentee Nokia's understanding of "tap" at the time of filing, just as WSOU argues that Microsoft's publications show its understanding of a disputed term.

*WSOU Invs. LLC v. Microsoft Corp.*, Case No. 20-454, Dkt. 49 at 33 (W.D. Tex. Jan. 8, 2021). Although the close relation of the N770 to the '728 confirms Nokia's understanding of "tap" in the specific context of keyboard input, it would be relevant even without that close connection. *Id.* Nokia's understanding further confirms that "tap" means "tap," and that the Court's construction of "tap direction" should give meaning to both "tap" and "direction."

Finally, WSOU briefly argues that "Google fails to allege either of the recognized exceptions to plain and ordinary meaning—lexicography or disavowal," and that, "[a]ccordingly, the plain and ordinary meaning of 'tap direction' should stand and no construction is needed." (Dkt. 36 at 6 (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).)  This argument suffers from several flaws.  First, to the extent that "tap direction" has a plain and ordinary meaning, it is a direction between two taps, not a direction between two touches.  Second, *Thorner* says no such thing, stating instead that "[t]he words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history," *Thorner*, 669 F.3d at 1365 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). But construing a term to have the "ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history" is not the same thing as construing a term to have its plain and ordinary meaning, *Thorner* does not say otherwise, and the law is replete with contrary examples.  *See Nystrom v. TREX Co.*, 424 F.3d 1136, 1145-46 (Fed. Cir. 2005); *CollegeNET, Inc. v. MarketLinx, Inc.*, Case No. 9-544, 2010 WL 11566364, at *7 (W.D. Tex. Sept. 10, 2010).  The Court should not follow WSOU into error.

**II.    U.S. PATENT NO. 9,335,825 (CASE NO. 6:20-CV-578-ADA)**

    **A.    "continuous wave doppler radar" (claims 1 and 19)**

| Google's Construction | WSOU's Construction | Alternate Construction |
|---|---|---|
| a Doppler radar that emits an uninterrupted electromagnetic signal | plain and ordinary meaning | a Doppler radar that emits a continuous electromagnetic signal that is not pulsed |

WSOU does not dispute that the term "continuous wave doppler radar" refers to a doppler radar that emits an electromagnetic signal.  (Dkt. 36 at 8-9.)  WSOU also agrees that a "continuous wave doppler radar" is not pulsed.  (*Id.*)  According to WSOU, "[t]he only dispute is whether Google should be allowed to replace the claim language 'continuous wave' with 'emit[ing] an *uninterrupted* electromagnetic signal.'"  (*Id.* at 9 (original emphasis).)

Google's construction simply articulates the '825 patent's distinction between "continuous" and pulsed by giving the term "continuous" its commonly understood meaning of "uninterrupted."  (Ex. 3 at 4:22-25 ("The Doppler radar does not have to be on continuously and may be pulsed to save power.").); (Ex. 4 at 003 (defining "continuous" as "uninterrupted; unbroken").)  This definition reflects both the commonly understood meaning of the term "continuous" and the requirement, based on the '825 patent's specification and prosecution history, that a "continuous wave doppler radar" is not pulsed.

Despite agreeing that "continuous wave doppler radar" cannot be pulsed, WSOU asserts that Google's definition of "continuous" could be "misapplied" to exclude Frequency Modulated Continuous Wave Doppler radar.  (Dkt. 36 at 9.)  Google's brief shows that is wrong (Dkt. 34 at 10), and WSOU still cannot explain *why* or *how* Google's construction could be applied that way.  Nonetheless, in an effort to reach common ground, Google is amenable to construing "continuous wave doppler radar" as "a doppler radar that emits a continuous electromagnetic signal that is not pulsed."  This obviates a dictionary definition and makes clear that a "continuous wave doppler radar" in the context of the '825 patent cannot encompass a radar emitting a pulsed electromagnetic signal—a point on which both parties agree.  (Dkt. 36 at 8-9.)

### B. "at least one memory and the computer program code are configured, with the at least one processor, to cause the apparatus to ... detect that an application is being started … [and] turn on a continuous wave doppler radar" (claim 1)

Google's brief establishes that this term is subject to § 112, ¶ 6 and indefinite for lack of corresponding structure. (Dkt. 34 at 11-13.) WSOU does nothing to negate these showings. In fact, WSOU avoids substantive discussion of this Court's *Dyfan* decision, which explained that applicants cannot "simply recite two nonce words—'processor' and 'code'—together in order to essentially write the claim in a means-plus-function format without being subject to § 112, ¶ 6." *Dyfan*, Dkt. 57, at 20 n.4. *Dyfan*'s analysis is further strengthened by the Federal Circuit's recent holding that "disclosure of computer-readable media or storage devices" is insufficient structure. *Rain Comp., Inc. v. Samsung Elecs. Am., Inc.*, 2021 WL 786361, at *4 (Fed. Cir. Mar. 2, 2021).

WSOU's reply raises a series of meritless arguments. <u>First</u>, WSOU states that Google "treats 'processor,' 'memory,' and 'computer program code' as nonce words, which can operate as substitutes for 'means.'" (Dkt. 36 at 10.) Yet the claims and specification do so themselves. Given the intrinsic record, these names "amount to generic terms or black box recitations of structure or abstractions." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020). WSOU's related argument about functional claiming misses the point. (Dkt. 36 at 10.) The law "does not permit patentees to freely engage in functional claiming *while circumventing* § 112(f) simply by avoiding the word 'means.'" *Egenera*, 972 F.3d at 1372-73.

<u>Second</u>, WSOU contends that the specification describes processors and memory as structure. (Dkt. 36 at 10.) That is wrong in several respects. Even if "processor" and "memory" may connote some degree of structure, that is irrelevant. "The question is *not whether a claim term recites any structure* but whether it recites sufficient structure." *Egenera*, 972 F.3d at 1374. WSOU's own citations to the '825 patent (Dkt. 36 at 10-11) demonstrate that a processor and

memory "refer[] only to a general category of whatever may perform the specified functions." *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014).  Indeed, the '825 patent's description of processors as having interfaces "via which data and/or commands are output … [and] input" (Ex. 3 at 5:22-47), establish that the processor and memory are nothing more than boundless placeholders for anything that could perform the claimed function.  Section 112, ¶ 6 thus applies because "the claims and specification provide no structural limitation to the inputs, outputs, connections, and operation."  *Egenera*, 972 F.3d at 1375.

Third, WSOU's reliance on *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003 (Fed. Cir. 2018) is misplaced.  There, the Federal Circuit remanded for the district court to conduct a proper analysis of whether the phrase "user interface code" connoted sufficient structure by describing "specific references to conventional graphical user interface programs or code." *Id.* at 1008.  Here, generic reference to "processor" and "memory" fails to impart sufficient structure.

Finally, WSOU's arguments regarding corresponding structure under step two are waived as not raised in its opening brief and legally wrong.  WSOU does not identify any passage that "clearly links or associates" any structure to perform the claimed functions. At most, WSOU's passing citations describe when the claimed function occurs or its result.  Neither suffices under § 112, ¶ 6.  *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009) (rejecting assertion that "describing when the computer would perform the function … constituted a sufficient description of the structure"); *Aristocrat Techs. Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1335 (Fed. Cir. 2008) (describing "results of the operation of an unspecified algorithm" is insufficient).

| | |
|---|---|
| Date: March 12, 2021 | Respectfully submitted, |

/s/   *Tharan Gregory Lanier, with permission by Michael E. Jones*
Tharan Gregory Lanier (pro hac vice)
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679) (*pro hac vice*)
Erika Warren (California Bar No. 295570)
Warren Lex LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-583@cases.warrenlex.com

Sasha Mayergoyz
**Jones Day**
77 W. Wacker Drive
Chicago, IL 60601
+1 (312) 782-3939
smayergoyz@jonesday.com

Joseph M. Sauer
**Jones Day**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190

- 7 -

+ 1 (216) 586-3939
jmsauer@jonesday.com

Sanjiv P. Laud
**Jones Day**
90 South Seventh Street
Suite 4950
Minneapolis, Minnesota 55402
+ 1 (612) 217-8800
slaud@jonesday.com

David E. Anderson
**Jones Day**
325 John H. McConnell Blvd, Suite 600
Columbus, OH 43215
+1 (614) 281-3617
danderson@jonesday.com

***Attorneys for Defendant Google LLC***

- 8 -

- 9 -

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 12, 2021, I electronically filed this document with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

*/s/ Michael E. Jones*