**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT | § | |
| | § | |
| Plaintiff, | § | Case No. 6:20-cv-571-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT**
**GOOGLE LLC TO FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Google LLC ("Google") hereby responds to the First Amended Complaint

(Docket No. 15) of Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development

("Plaintiff" or "WSOU") with the following Amended Answer and Affirmative Defenses.

Google denies the allegations and characterizations in WSOU's Complaint unless expressly

admitted in the following numbered paragraphs, which correspond to the numbered paragraphs

in the Complaint.

**NATURE OF THE ACTION**

1.      Google admits that Plaintiff brought this action under the United States patent

laws, 35 U.S.C. §§ 1, et. seq. Google denies any remaining allegations in this paragraph.

**THE PARTIES**

2.      Google is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this paragraph, and therefore denies them.

3.      Google admits that Google LLC is a Delaware limited liability company.  Google admits that it has an office located at 500 West 2nd Street, Austin, Texas 78701.  Google denies any remaining allegations of this paragraph.

## JURISDICTION AND VENUE

4.      Google admits that Plaintiff brought this action under the United States patent laws, 35 U.S.C. §§ 1, et. seq. Google denies any remaining allegations of this paragraph.

5.      Google admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Google denies any remaining allegations of this paragraph.

6.      This paragraph sets forth argument and legal conclusions to which no response is required.  To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

7.      Google admits that venue is proper in this District for purposes of this particular action but not convenient or in the interests of justice under 28 U.S.C. § 1404(a).  Google admits that it has an office in this District and is registered to do business in the State of Texas.  Google admits that it offers products and services in this District.  Any remaining allegations in this paragraph consist of argument and legal conclusions, to which no response is required, but to the extent a response is required, Google denies the allegations, and specifically denies that it has committed acts of infringement in this District or any other district.

8.      To the extent the allegations in paragraph 8 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best

source of their full content and context.  Google admits that as of August 2018, it had more than 800 employees in Austin.  Google denies any remaining allegations in this paragraph.

9.      To the extent the allegations in paragraph 9 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and therefore denies them.

10.     To the extent the allegations in paragraph 10 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google admits that it has an office at 500 West 2nd Street in Austin, Texas that is at least 300,000 square feet.  Google denies any remaining allegations in this paragraph.

11.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

12.     To the extent the allegations in paragraph 12 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

13.     To the extent the allegations in paragraph 13 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google admits that it has offices in multiple countries,

that it stores and organizes certain types of data, and that it serves digital content to end users around the world.  Google denies any remaining allegations in this paragraph.

14.    Denied.

15.    Google admits that it offers products and services in this District.  Google denies any remaining allegations in this paragraph.

16.    To the extent the allegations in paragraph 16 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

17.    To the extent the allegations in paragraph 17 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

18.    To the extent the allegations in paragraph 18 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

19.    Google states the following:  Google uses a tiered network to deliver content to its users.  The core of the network is Google's data centers which provide computation and backend storage.  The next tier of Google's network infrastructure is known as "Edge Points of Presence" ("PoPs"), which connect Google's network to the rest of the internet.  The last tier of the network is the "Google Global Cache" ("GGC") servers or "edge nodes."  GGC servers are off-the-shelf

computers hosted in the facilities of a local Internet Service Provider ("ISP"), at the request of the ISP.  If an ISP chooses to host a GGC server, then a copy of portions of certain digital content that is popular with the ISP's subscribers—say, parts of a popular YouTube video—can be temporarily stored or "cached" on the GGC server.  As a result, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so.  GGC servers, though, are not necessary for the delivery of Google content. Google denies any remaining allegations in this paragraph.

20.     To the extent the allegations in paragraph 20 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google states that, if an ISP chooses to host a GGC server, then a copy of portions of certain digital content that is popular with the ISP's subscribers—say, parts of a popular YouTube video—can be temporarily stored or "cached" on the GGC server.  As a result, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so.  GGC servers, though, are not necessary for the delivery of Google content.  Google denies any remaining allegations in this paragraph.

21.     Google states that, if an ISP chooses to host a GGC server and a copy of portions of certain digital content is temporarily stored or "cached" on the GGC server, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so.  GGC servers, though, are not necessary for the delivery of Google content.  Google denies any remaining allegations in this paragraph.

22.     Google admits that at certain points in time, its GGC servers have run software that has been referred to as "ustreamer."  Google denies any remaining allegations of this paragraph.

23.     Google admits that at certain points in time, its GGC servers have run software that has been referred to as "ustreamer."  Google denies any remaining allegations of this paragraph.

24.     Google admits that at certain points in time, its GGC servers have run software that has been referred to as "ustreamer."  Google denies any remaining allegations of this paragraph.

25.     Google states that, if an ISP chooses to host a GGC server and a copy of portions of certain digital content is temporarily stored or "cached" on the GGC server, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so.  GGC servers, though, are not necessary for the delivery of Google content.  Google admits that some GGC servers are hosted by ISPs in the Western District of Texas.  Google denies any remaining allegations in this paragraph.

26.     Google states that if an ISP requests to host a GGC server, Google evaluates the request, and then the ISP and Google may enter into a service agreement that defines each party's role.  Google denies any remaining allegations in this paragraph.

27.     Google admits that there are GGC servers in the Western District of Texas that are hosted by internet service providers.  Google admits that the webpage in Paragraph 27 purports to identify ISP-hosted GGC servers in or around Midland, El Paso, Austin, and San Antonio.

– 6 –

Google admits that Midland, El Paso, Austin, and San Antonio are located in this District.

Google denies any remaining allegations in this paragraph.

28.     Denied.

29.     Google admits that GGC servers located in the Western District of Texas may cache content.  Google denies any remaining allegations in this paragraph.

30.     Google admits that GGC servers located in the Western District of Texas may cache content that may include portions of videos, apps, and other digital content.  Google denies any remaining allegations in this paragraph.

31.     Google admits that GGC servers located in the Western District of Texas may cache content that may include portions of videos, apps, and other digital content.  Google denies any remaining allegations in this paragraph.

32.     Google states that it may generate revenue by delivering advertising and when users purchase digital content through Google Play Store.  Google denies any remaining allegations in this paragraph.

33.     Denied.

34.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

35.     Denied.

36.     Denied.

37.     To the extent the allegations in paragraph 37 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best

source of their full content and context.  Google denies any remaining allegations in this paragraph.

38.      Denied.

39.      To the extent the allegations in paragraph 39 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

40.      To the extent the allegations in paragraph 40 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

41.      To the extent the allegations in paragraph 41 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

## COUNT ONE – INFRINGEMENT OF U.S. PATENT NO. 7,817,858

42.      Google repeats and re-alleges its answers to the preceding paragraphs as if fully set forth here.

43.      Google admits that, on its face, U.S. Patent No. 7,817,858 ("the '858 Patent") is entitled "Communication Terminal," and lists an issue date of October 19, 2010, and that Exhibit A appears to be a copy of the '858 Patent.  Google lacks sufficient information to admit or deny any remaining allegations in this paragraph and, therefore, denies them.

44.     Google lacks sufficient information to admit or deny the allegations in this paragraph and, therefore, denies them.

45.     This paragraph sets forth argument and legal conclusions to which no response is required.  To the extent this paragraph includes any allegations to which a response is required, Google admits that versions of products marketed under the name "Gboard" are available in the United States.  Google denies any remaining allegations in this paragraph, and specifically denies that it has committed acts of infringement in this District or any other district.

46.     Google admits that publicly available statistics on the Google Play Store state that various versions of products marketed under the name "Gboard" have been installed "1,000,000,000+" times.  Any remaining allegations of this paragraph concern WSOU's definition of the term "Accused Products," and thus state no facts for Google to admit or deny.

47.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  Google admits that it has sold various devices marketed under the Google Pixel name including the Pixel 3, and that, when it sold the Pixel 3, the Pixel 3 included at least one version of one application marketed under the name "Gboard."  Google admits that it has sold and continues to sell various products marketed under names including "Pixel."  Google denies any remaining allegations of this paragraph.

48.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  Google admits that some versions of some applications marketed under the name "Gboard" contain a feature commonly known as a "virtual keyboard."  Google admits that some

versions of some applications marketed under the name "Gboard" contain features marketed under the names "Glide Typing," "Voice Typing" and "Handwriting."  Google denies any remaining allegations of this paragraph.

49.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  Google admits that some versions of some applications marketed under the name "Gboard" operate on some Android and iOS devices.  Google admits that the Pixel 3 includes a touchscreen.  Google denies any remaining allegations of this paragraph.

50.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  Google admits that some versions of some applications marketed under the name "Gboard" contain a feature marketed as "Handwriting."  Google denies any remaining allegations of this paragraph.

51.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  Google admits that some versions of some applications marketed under the name "Gboard" contain a feature marketed as "Handwriting."  Google denies any remaining allegations of this paragraph.

52.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  Google admits that some versions of some applications marketed under the name

"Gboard" contain a feature marketed as "Handwriting."  Google denies any remaining allegations of this paragraph.

53.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  Google admits that some versions of some applications marketed under the name "Gboard" contain a feature marketed as "Handwriting."  Google denies any remaining allegations of this paragraph.

54.     This paragraph sets forth argument and legal conclusions to which no response is required.  To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

55.     This paragraph sets forth argument and legal conclusions to which no response is required.  To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

56.     Google admits that it received service of the Complaint and that the Complaint identifies the '858 patent by number.  Google denies any remaining allegations of this paragraph.

57.     To the extent the allegations in this paragraph purport to describe or quote one or more documents, Google states that those documents are the best source of their full content and context.  This paragraph sets forth argument and legal conclusions to which no response is required.  To the extent this paragraph includes any allegations to which a response is required,

Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

58.     This paragraph sets forth argument and legal conclusions to which no response is required.  To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

### RESPONSE TO PLAINTIFF'S REQUEST FOR RELIEF

Google denies the underlying allegations of Plaintiff's Prayer for Relief against Google, denies that Plaintiff is entitled to any relief whatsoever, and requests that the Court deny all relief to Plaintiff, enter judgment in favor of Google, and award Google its attorneys' fees as the prevailing party in the action.

### RESPONSE TO PLAINTIFF'S DEMAND FOR JURY TRIAL

Google admits that Plaintiff demands a trial by jury, and Google likewise demands a trial by jury on all issues so triable.

### GOOGLE'S AFFIRMATIVE DEFENSES

Google's affirmative defenses are provided below.  Google further reserves the right to amend this Answer to add affirmative defenses, including allegations of inequitable conduct, and/or any other defenses currently unknown to Google, as they become known throughout the course of discovery in this action.  Assertion of a defense is not a concession that Google has the burden of proving the matter asserted.

## FIRST AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

1. Plaintiff is not entitled to any relief against Google because Google does not and has not directly or indirectly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '858 patent.

## SECOND AFFIRMATIVE DEFENSE – PROSECUTION HISTORY ESTOPPEL

2. Plaintiff is estopped from construing or interpreting any claims of the '858 patent in such a way as may cover and/or include, either literally or under the doctrine of equivalents, Google's products, processes, services, and/or activities, and/or has waived any right to do so by reason of cancellation, limitation, or abandonment of claims, admissions, arguments, amendments, and/or representations made by or on behalf of the applicants in any proceedings before the United States Patent and Trademark Office ("PTO").

## THIRD AFFIRMATIVE DEFENSE – INVALIDITY

3. Each and every asserted claim of the '858 patent is invalid for failure to meet the requirements of Title 35, United States Code, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 thereof, and the rules, regulations, and laws pertaining thereto, and/or obviousness type double patenting.

## FOURTH AFFIRMATIVE DEFENSE – EQUITABLE DOCTRINES

4. Plaintiff's claims against Google regarding the '858 patent are barred by the equitable doctrines of waiver, estoppel, and/or acquiescence.

## FIFTH AFFIRMATIVE DEFENSE – LIMITATION OF DAMAGES

5.      The relief sought by Plaintiff is barred or limited by 35 U.S.C. §§ 286, 287, and/or 288.  Plaintiff is not entitled to any damages for activities before the filing of this action. Plaintiff did not notify Google of its alleged infringement before the filing of this action.

## SIXTH AFFIRMATIVE DEFENSE – LACK OF STANDING

6.      Plaintiff lacks standing to bring this suit to the extent that Plaintiff and/or its predecessors-in-interest lacked sufficient chain of title to the '858 patent.

7.      In addition, Plaintiff lacks standing to bring this suit to the extent that Plaintiff lacks substantial rights to the '858 patent.  On information and belief, Plaintiff lacks standing to bring and maintain this suit because the patent fails to identify or join at least one co-inventor of the '858 patent.

8.      On information and belief, the contributions of Michael Longe, through his conference presentation of Tegic Communications' XT9 software for handwriting input prior to the '858 patent filing date, are significant to the conception and invention of the '858 patent claims.

9.      On information and belief, Mr. Longe was a co-inventor on the '858 patent.  Mr. Longe has not consented to, nor is he party to, the claims asserted against Defendants. Therefore, to the extent that Plaintiff lacks substantial rights to the '858 patent under 35 U.S.C. §§ 262 and 281, Plaintiff lacks standing to bring and maintain this suit because it does not satisfy the statutory prerequisites for bringing a patent infringement suit.

## SEVENTH AFFIRMATIVE DEFENSE – LICENSE; PATENT EXHAUSTION

10.     On information and belief, Plaintiff's claims for relief are barred in whole or in part by an express or implied license, and/or the patent exhaustion doctrine.

## EIGHTH AFFIRMATIVE DEFENSE – NO WILLFUL INFRINGEMENT

11.     Plaintiff is not entitled to a finding of willful infringement with a corresponding increase in damages under 35 U.S.C. § 284.

## NINTH AFFIRMATIVE DEFENSE – NOT EXCEPTIONAL CASE

12.     Plaintiff is not entitled to a finding that this case is exceptional warranting attorneys' fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

## TENTH AFFIRMATIVE DEFENSE – ENSNAREMENT

13.     WSOU's claims for infringement are barred by the doctrine of ensnarement.

## ELEVENTH AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

14.     The Complaint fails to state a claim upon which relief can be granted.

## TWELFTH AFFIRMATIVE DEFENSE – INEQUITABLE CONDUCT

15.     The '858 patent is invalid and unenforceable because the alleged inventor, or others involved in the prosecution of the '858 patent, committed inequitable conduct by intentionally failing to disclose material prior art to the PTO.

16.     Additionally, upon information and belief, the '858 patent is invalid and unenforceable because the alleged inventor of the '858 patent did not invent the subject matter of the '858 patent in whole or in part.

17.     Nokia Corporation was a Finnish manufacturer of mobile phones, and the original assignee of the '858 patent.

18.     Prior to filing the application that led to the '858 patent, Nokia released a wireless internet appliance product called the Nokia 770 Internet Tablet.  As shown in the September 2005 Nokia 770 Internet Tablet User Guide, the N770 shipped with a keyboard layout shown below, where region 7 represents "a numeric keyboard":



GOOG-WSOU571-PA-00000768 (Nokia 770 Internet Tablet User Guide), at 19.   The N770 ran the Maemo operating system, which was open source.

19.     On information and belief, Nokia sponsored the 8th International Conference on Human-Computer Interaction with Mobile Devices and Services in Espoo, Finland, from September 12-15, 2006, also known as MobileHCI'06.  MobileHCI'06 was co-chaired by Mika Röykkee of Nokia Research Center.  Anne Kaikkonen of Nokia also served as Secretary of the conference.

20.     According to contemporaneous description, "MobileHCI provides a forum for academics and practitioners to discuss the challenges, potential solutions and innovations towards effective interaction with mobile systems and services.  It covers the analysis, design, evaluation and application of human-computer interaction techniques and approaches for all

mobile computing devices, software and services."  8th International Conference on Human

Computer Interaction with Mobile Devices and Services (November 10, 2005), archived at

https://web.archive.org/web/20060615010300/http://newclass.soberit.hut.fi/mobilehci2006/.

Among the topics covered at MobileHCI'06 were "multimodal interaction," "novel user

interfaces and interaction techniques," and "usability of mobile devices and services."

Human-Computer Interaction with Mobile Device and Services (March 1, 2006), archived at

https://web.archive.org/web/20051221055635/http://www.soberit.hut.fi:80/MobileHCI2006/.

21.     On information and belief, Nokia representatives, as well as representatives from

other mobile device and computing companies, attended Mobile HCI'06.

22.     The final MobileHCI'06 presentation, on September 15, 2006, was a panel

discussion called "Novel Input Shootouts."  Conference Program (January 9, 2006), archived at

https://web.archive.org/web/20060704022123/http://newclass.soberit.hut.fi/mobilehci2006/progr

am.  The "Novel Input Shootouts" panel was immediately followed by a reception at Nokia

headquarters.  *Id.*

23.     Among the presenters at the "Novel Input Shootouts" panel was Michael Longe

of Tegic Communications.  During the "Novel Input Shootouts" discussion, Michael Longe

presented Tegic's XT9 software for handwriting input using a modified version of the keyboard

from Nokia's open-source Maemo operating system.  Mr. Longe's presentation included a video

demonstrating QWERTY typing intermixed with handwriting in a handwriting input area shown

in the lower right keyboard region:



GOOG-WSOU571-PA-00001267.

24.    The application that became the '858 patent was filed on October 31, 2006, shortly after the XT9 presentation on September 15, 2006.  The application included Figure 3a, showing a "handwriting input area" as follows:

**U.S. Patent**          Oct. 19, 2010          Sheet 2 of 2          US 7,817,858 B2



25.     On information and belief, the applicant knew of the XT9 Presentation and did not disclose it to the examiner during prosecution of the '858 patent.

26.     On information and belief, individuals with a duty to disclose the XT9 presentation during patent prosecution made a deliberate decision to withhold it and to deceive the PTO by doing so.

27.     On information and belief, the '858 patent would not have issued if the examiner had known of the XT9 Presentation, as it was material to the application.  For example, during prosecution of the '858 patent, the examiner rejected all claims as anticipated or obvious over prior art disclosing input of non-textual symbols in a communication terminal.  U.S. Patent Application No. 11/554,911, Non-Final Rejection, dated November 24, 2009.  The applicant responded by amending the claims to add "displaying a handwriting input area upon detection that a non-textual symbol is to be appended to a textual symbol."  U.S. Patent Application No. 11/554,911, Response to Office Action, dated November 24, 2009 at 2-3.  The applicant argued that the prior art failed to teach "displaying a handwriting input area upon detection that a non-textual symbol is to be appended to a textual symbol" including that "[t]here is simply no disclosure or suggestion whatsoever in Griffin of a 'hand writing input area' as recited in Applicant's claim 1 for inputting hand written text into the device."  *Id*. at 6.  The claims were allowed following this amendment.  U.S. Patent Application No. 11/554,911, Notice of Allowance, dated August 2, 2010.

28.     Additionally, on information and belief, the inventor named on the '858 patent did not solely invent the subject matter of the '858 patent.

29.     On information and belief, the named inventor derived the subject matter of the '858 patent, in whole or in part, from information that he obtained from Michael Longe during his participation in the XT9 Presentation prior to the filing date of the '858 patent.

30.     On information and belief, despite Mr. Longe's contributions to the subject matter the '858 patent purports to claim, he is not listed as an inventor on the '858 patent.

31.     On information and belief, individuals with a duty to disclose all inventors of the subject matter of the '858 patent intentionally deceived the PTO by failing to join all true inventors.  But for the intentional withholding of this material information, the '858 patent would not have issued.

## REQUEST FOR RELIEF

WHEREFORE, Google respectfully requests that the Court:

(A)     Enter judgment that Google does not infringe any claims of the '858 patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that the '858 patent is invalid;

(C)     Enter judgment that Plaintiff lacks standing to bring a claim under 35 U.S.C. §§ 262, 281;

(D)     Declare that this case is exceptional under 35 U.S.C. § 285; and

(E)     Award Google its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Date:  July 16, 2021                    Respectfully submitted,

                                        /s/ Michael E. Jones

Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
*(pro hac vice)*
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-571@cases.warrenlex.com

Tharan Gregory Lanier (California Bar No. 138784)
*(pro hac vice)*
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I certify that on July 16, 2021, I served the foregoing by notice of electronic filing on

counsel of record registered as CM/ECF users.

*/s/  Michael E. Jones*