AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | | |
|---|---|---|---|
| WSOU Investments LLC | ) | | 20-571 |
| *Plaintiff* | ) | | 20-572 |
| v. | ) | Civil Action No. | 20-573 |
| | ) | | 20-575 |
| Google LLC | ) | | 20-576 |
| *Defendant* | ) | | 20-579 |

20-571
20-572
20-573
20-575
20-576
20-579
20-580
20-583
20-584
20-585

(If the action is pending in another district, state where:                )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Terrier SSC
      c/o VCORP Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A

| Place: Basye Santiago Reporting 1201 N. Orange Street, Suite 7013, Wilmington, Delaware 19801 | Date and Time: September 22, 2021 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

     The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   September 7, 2021

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Google LLC                                                        , who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

## DEFINITIONS

1.      The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572,

6:20-cv-00573, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583,

6:20-cv-00584, 6:20-cv-00585.

2.      The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU

Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers,

directors, principals, current and former employees, counsel, agents, consultants, representatives,

and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents,

divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest,

and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under

common control with it, and all predecessors and successors in interest to such entities.

3.      The term "Defendant" or "Google" shall mean Google LLC, and shall include,

individually or collectively, any and all of its past and present officers, directors, partners,

trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents,

representatives, and attorneys.

4.      The term "Terrier" or "you" or "your" shall mean Terrier SSC, LLC, OT WSOU

Terrier Holdings, LLC; its current and former officers, directors, principals, employees, counsel,

agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees,

franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf

of any of the foregoing, and any other entities that own or control or are owned or controlled by

or share common ownership or control with any of the foregoing, as well as predecessors and

successors in interest to such entities.

5.      The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6.      The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

7.      The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

8.      The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives,

employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

9.      The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

10.     The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.     The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that

– 3 –

own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

12.     The term  "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

13.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

– 4 –

15.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

16.     The term "asserted patent" or "asserted patents" shall mean one or more of any patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos. 7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180, 8,737,961, 8,803,697.

17.     The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party, as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

18.     The term "related application" shall mean any patent or application related to a patent, including any application or other filing from which the patent claims priority, any foreign counterpart patents or applications, whether by continuation, continuation-in-part, division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

19.     The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

20.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

21.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

22.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

23.     The terms "including" or "that includes" mean including without limitation.

24.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

25.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

26.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

27.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded

material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

28.     "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

29.     Use of the singular also includes the plural and vice-versa.

30.     The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

31.     The words "any" and "each" shall be construed to encompass the word "all."

32.     A verb in any tense shall mean the verb in all other tenses.

– 7 –

33.     "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

## **INSTRUCTIONS**

1.     The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.  The words "any" and "each" shall be construed to encompass the word "all."  The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.     In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.      In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.      If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

a.   The date the document was created;

b.   The names of the owner or author(s)/sender(s) of the document;

c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

d.   A brief description of the document and type of legal advice; and

  e. The grounds for the claim or privilege (e.g., attorney work product,

   attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or

firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or

foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there

should be a statement of whether the laws of the agent's country grant privileged status to a

patent agent's communication. The type of privilege claimed must also be stated, together with

certification that all elements of the claimed privilege have been met and not waived with respect

to each document.

  7. Technical terms shall have their normal technical meaning. If you find the

meaning of any term in these requests to be unclear, you must assume a reasonable meaning,

state what the assumed meaning is, and answer on the basis of that assumed meaning. If you

wish to clarify your interpretation of any particular term that it relied on in answering a request,

you should do so in its answer.

  8. To the extent that any portion of a request requires the production of documents

that were at one time within your possession, custody, or control, but which are now in the

possession, custody, or control of another, you are directed to identify such documents in a

manner sufficient to describe such documents for the purpose of preparing and serving a proper

subpoena and to give the name, telephone number, address, and e-mail address of the person last

known by you to have been in possession, custody, or control of such documents.

## **REQUESTS FOR PRODUCTION**

  1. Documents concerning the formation of Terrier.

  2. Documents concerning the formation of OT WSOU Terrier Holdings, LLC.

3.      Documents concerning your corporate structure.

4.      Documents concerning your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

5.      Documents concerning discussions with BP Funding Trust regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

6.      Agreements with BP Funding Trust concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

7.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

8.      Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

9.      Documents regarding the assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

10.     Documents concerning the nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any

portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

11.     Documents regarding agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

12.     Documents regarding agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

13.     Documents regarding agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

14.     Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

15.     Documents concerning communications with any of the named inventors regarding any of the asserted patents, this litigation or Google.

16.     Communications with WSOU regarding the asserted patent, related patents, this litigation or Google.

– 12 –

17.     Documents concerning communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against Google and the WSOU v. Google Litigations.

18.     Documents concerning the formation of WSOU.

19.     Documents concerning any contemplated acquisition of patents or rights in patents from Nokia.

20.     Documents sufficient to show any interests (current or prior) in WSOU.

21.     Documents sufficient to show any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control or be involved in the resolution of any litigation involving any asserted patent.

22.     Documents sufficient to show your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, or Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and BP Funding Trust, or any entity associated with the foregoing.

23.     Documents concerning the "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

24.     Documents concerning the May 16, 2019 "Patent Security Agreement" and any related agreements, including the circumstances surrounding the recorded release of your security interest regarding the "Patent Security Agreement."

– 13 –

25.     Documents concerning the release of your security interest, recorded June 3, 2021, at USPTO Reel 056526 Frame 0093, the circumstances of this agreement, and any related agreements.

26.     Documents concerning the value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including any portfolio containing any asserted patent or related patent.

27.     Documents concerning any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

28.     Documents produced in response to a subpoena served by any other WSOU Defendant.

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Texas

| | | |
|---|---|---|
| WSOU Investments LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Google LLC | ) | |
| *Defendant* | ) | |

20-571
20-572
20-573
20-575
20-576
20-579
20-580
20-583
20-584
20-585

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Terrier SSC
c/o VCORP Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place:   Basye Santiago Reporting  1201 N. Orange Street, Suite 7013, Wilmington, Delaware 19801 | Date and Time:  September 22, 2021 |
|---|---|

The deposition will be recorded by this method:   stenographic, video and audio recording

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   September 7, 2021

*CLERK OF COURT*

OR

_____   _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____
Google LLC _____, who issues or requests this subpoena, are:

Jennifer A. Kash, Warren Lex LLP, 2261 Market Street, San Francisco, CA 94114; jen@warrenlex.com; 415-895-2923

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS

1.      The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585.

2.      The terms "WSOU," shall mean plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.      The term "Defendant" or "Google" shall mean Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.      The term "Terrier" or "you" or "your" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC; its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

5.     The term "Orange" and "Orange Holdings" shall mean Orange Holdings, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6.     The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

7.     The term "Wade and Company" means Wade and Company or Wade & Company, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

8.     The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives,

employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

9.      The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent, Alcatel Lucent Enterprises, Alcatel-Lucent International, Alcatel and Lucent Technologies), as well as predecessors and successors in interest to such entities.

10.      The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

11.      The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that

own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

12.     The term  "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC, Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

13.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

– 4 –

15.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

16.     The term "asserted patent" or "asserted patents" shall mean one or more of any patent asserted in the WSOU v. Google litigations, including without limitation, U.S. Patent Nos. 7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180, 8,737,961, 8,803,697.

17.     The term "affiliates" shall mean any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party, as well as all predecessors and successors of such entities. For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

18.     The term "related application" shall mean any patent or application related to a patent, including any application or other filing from which the patent claims priority, any foreign counterpart patents or applications, whether by continuation, continuation-in-part, division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

– 5 –

19.     The term "related patent" shall mean any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

20.     The term "named inventor" means any person or persons named as an inventor on the face of any asserted patent or related patent.

21.     The term "accused product" shall mean any item, device, or product that WSOU contends infringes one or more claims of any asserted patent.

22.     The term "asserted claim" shall mean any claim of any asserted patent that WSOU contends has been infringed by Google.

23.     The terms "including" or "that includes" mean including without limitation.

24.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

25.     The term "prior patent owner" shall mean any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

26.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

27.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded

– 6 –

material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

28.     "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail.

29.     Use of the singular also includes the plural and vice-versa.

30.     The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

31.     The words "any" and "each" shall be construed to encompass the word "all."

32.     A verb in any tense shall mean the verb in all other tenses.

33.     "Other WSOU Defendants" shall mean any and all companies that WSOU has sued in patent litigation matters, including but not limited to ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.

## **INSTRUCTIONS**

1.      The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.  The words "any" and "each" shall be construed to encompass the word "all."  The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.      In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.      In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.      If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

a.   The date the document was created;

b.   The names of the owner or author(s)/sender(s) of the document;

c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

d.   A brief description of the document and type of legal advice; and

     e.   The grounds for the claim or privilege (e.g., attorney work product, attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or foreign patent agent, he or she should be so identified. In the case of a foreign patent agent, there should be a statement of whether the laws of the agent's country grant privileged status to a patent agent's communication. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

7.     Technical terms shall have their normal technical meaning. If you find the meaning of any term in these requests to be unclear, you must assume a reasonable meaning, state what the assumed meaning is, and answer on the basis of that assumed meaning. If you wish to clarify your interpretation of any particular term that it relied on in answering a request, you should do so in its answer.

8.     To the extent that any portion of a request requires the production of documents that were at one time within your possession, custody, or control, but which are now in the possession, custody, or control of another, you are directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena and to give the name, telephone number, address, and e-mail address of the person last known by you to have been in possession, custody, or control of such documents.

**<u>TOPICS FOR DEPOSITION</u>**

1.     The subject matter of all requests for production in the concurrently served document subpoena.

2.      The authenticity of the documents produced in response to the concurrently served document subpoena.

3.      The formation of Terrier.

4.      The formation of OT WSOU Terrier Holdings, LLC.

5.      Your corporate structure.

6.      Your investments or interests in the asserted patents, including assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

7.      Discussions with BP Funding Trust regarding any asserted patent, a portfolio including an asserted patent, assignment of any interest in any asserted patent or a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

8.      Agreements with BP Funding Trust concerning any potential or actual transaction regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent.

9.      Agreements with the named inventor(s) of any of the asserted patents, including assignment agreements, consulting agreements, employment agreements and any agreements pertaining to litigation involving the asserted patents or any related patents.

10.     Compensation, cost-sharing, or profit sharing agreements with any of the named inventor(s) of the asserted patent(s).

11. The assignment, licensing, acquisition, financial interest, security interest, lien, sale, transfer of rights (in whole or in part) and any other disposition of or any offers to buy, sell, obtain rights to, or licenses any of the asserted patents.

12. The nature and scope of any rights you had in the past or currently have in each of the asserted patents, related applications or related patents from the time each alleged invention was conceived through the present, including the right to control any portion of litigation, future royalties, payment for licenses, contingent rights, or payments depending on the outcome of litigation.

13. Agreements relating to each of the asserted patents (or any portfolio including any of the asserted patents), including assurances, covenants not to sue and understandings not to assert any of the asserted patents against potential licensees.

14. Agreements between you and WSOU, Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, regarding any asserted patent, a portfolio including an asserted patent, or the acquisition or potential acquisition of any portfolio that might have included an asserted patent, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

15. Agreements with Nokia or other WSOU Defendants regarding an asserted patent or a portfolio including an asserted patent.

16. Communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Orange Holdings, Wade and Company, Omega Credit Opportunities Master Fund, BP Funding Trust, Juniper Capital Partners, Coast Asset

Management, or WCFT Cayman regarding an asserted patent, a portfolio including an asserted patent, or actual or potential litigation relating to an asserted patent.

17.     Communications with any of the named inventors regarding any of the asserted patents, this litigation or Google.

18.     Communications with WSOU regarding the asserted patent, related patents, this litigation or Google.

19.     Communications between you and any other entity relating to the possibility of patent litigation regarding the asserted patent and related patents, including any actual or potential patent litigation against Google and the WSOU v. Google Litigations.

20.     The formation of WSOU.

21.     Any contemplated acquisition of patents or rights in patents from Nokia.

22.     Any interests (current or prior) in WSOU.

23.     Any actual, contingent, or potential (1) right to license or sublicense any asserted patent, (2) right to control the licensing of any asserted patent, or (3) right to control the resolution of any litigation involving any asserted patent.

24.     Your relationship with Stuart A. Shanus, Eric Schneider, Andrew Neuberger, Marc Wade, Craig Etchegoyen, Orange Holdings, WSOU, Uniloc USA, Inc., WCFT Cayman, Omega Credit Opportunities Master Fund, Wade and Company, and BP Funding Trust, or any other entity associated with the foregoing.

25.     The "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, and any related agreements.

26.     Communications regarding the May 16, 2019 "Patent Security Agreement" and any related agreements, including the circumstances surrounding the recorded release of your security interest regarding the "Patent Security Agreement."

27.     The release of your security interest, dated June 3, 2021, recorded at USPTO Reel 056526 Frame 0093, the circumstances of this agreement, and any related agreements.

28.     The value of, any valuations of or attempts to value any asserted patent, related patent, or related application, whether individually or in combination with any other patents or applications, including any portfolio containing any asserted patent or related patent.

29.     Any evaluation or analysis of any asserted patent, any related patent, or any related application, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

30.     Responses to any subpoena served by any other WSOU Defendant.