# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>Defendants. | Case Numbers:<br>**6:20-cv-00473-ADA**[1]<br>6:20-cv-00474-ADA<br>6:20-cv-00475-ADA<br>6:20-cv-00476-ADA<br>6:20-cv-00477-ADA<br>6:20-cv-00478-ADA<br>6:20-cv-00479-ADA<br>6:20-cv-00480-ADA<br>6:20-cv-00481-ADA<br>6:20-cv-00482-ADA<br>6:20-cv-00485-ADA<br>6:20-cv-00486-ADA |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>ZTE CORPORATION,<br><br>Defendant. | Case Numbers:<br>**6:20-cv-00487-ADA**<br>6:20-cv-00488-ADA<br>6:20-cv-00489-ADA<br>6:20-cv-00490-ADA<br>6:20-cv-00491-ADA<br>6:20-cv-00492-ADA<br>6:20-cv-00493-ADA<br>6:20-cv-00494-ADA<br>6:20-cv-00495-ADA<br>6:20-cv-00496-ADA<br>6:20-cv-00497-ADA |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case Numbers:<br>**6:20-cv-00571-ADA**<br>6:20-cv-00572-ADA<br>6:20-cv-00573-ADA<br>6:20-cv-00575-ADA<br>6:20-cv-00576-ADA<br>6:20-cv-00579-ADA<br>6:20-cv-00580-ADA<br>6:20-cv-00583-ADA<br>6:20-cv-00584-ADA<br>6:20-cv-00585-ADA |

---

[1] This document is being e-filed *only* in the low-number proceedings, as indicated by the case numbers with bold typeface.

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>　　　　Defendant. | Case Numbers:<br>**6:20-cv-00725-ADA**<br>6:20-cv-00726-ADA<br>6:20-cv-00728-ADA<br>6:20-cv-00730-ADA<br>6:20-cv-00783-ADA |
| GOOGLE, LLC,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>TERRIER SSC, LLC,<br><br>　　　　Respondent. | Case Number:<br>**6:21-mc-01269-ADA** |
| GOOGLE, LLC,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>BP FUNDING TRUST,<br><br>　　　　Respondent. | Case Number:<br>**6:21-mc-01270-ADA** |
| GOOGLE, LLC,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>AQUA LICENSING, LLC,<br><br>　　　　Respondent. | Case Number:<br>**6:21-mc-01309-ADA** |

**OMNIBUS REPLY BY NON-PARTY SUBPOENA RECIPIENTS BP FUNDING TRUST, BASEPOINT ADMINISTRATIVE, LLC, TERRIER SSC, LLC, AND AQUA LICENSING, LLC, IN SUPPORT OF THEIR MOTION FOR LIMITED-PURPOSE CONSOLIDATION AND PROTECTIVE ORDER**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... 3

REPLY ....................................................................................................................................... 4

   (a)   The Defendants All Fail to Demonstrate Any Prejudice From Consolidation ................ 5

   (b)   Defendants Fail to Establish That They Made a Good Faith Effort to Obtain the Information Sought from WSOU Prior to Burdening the Requesting Non-Parties with Subpoenas, Letters, and Motion Practice .......................................................................... 6

   (c)   Defendants Marshall No Authority Suggesting it Would be an Abuse of Discretion for this Court to Grant the Relief Requested ......................................................................... 9

   (d)   In Trying to Argue That Their Subpoenas and Circumstances are Supposedly Unique, the Defendants Further Underscore That they are all Making the Same Arguments in Support of the Same Discovery ...................................................................................... 11

   (e)   Google Attacks a Straw Man When it Argues the Court Should "Ignore" the Microsoft Proceedings—Proceedings Which Are Relevant to Show that any Delay in Resolution of the Google Motions is the Defendants' Fault .......................................................... 14

   (f)   ZTE's Argument that the Requesting Non-Parties Purportedly Failed to Properly Meet and Confer is Belied by Extensive Evidence to the Contrary and its Insistence that it is Going to Double Down and Repeat Google's Delaware Detour Proves That Consolidation is Warranted .............................................................................................. 16

   (g)   Conclusion ........................................................................................................................ 19

## REPLY

Together with the plaintiff WSOU, which joined in the instant motion (*e.g.*, 20-cv-725, ECF No. 88), certain subpoena recipients, the "**Requesting Non-Parties,**"[2] filed a motion for limited purpose consolidation and for a protective order on January 21, 2022 (*e.g.*, 21-mc-1269, ECF No. 34, "**Consolidation Motion**").  Google (21-mc-1269, ECF No. 36, "**Google Opp.**"), Dell (20-cv-473, ECF No. 149, "**Dell Opp.**"), and ZTE (20-cv-487, ECF No. 165, "**ZTE Opp.**") each filed briefs opposing the Consolidation Motion.

Helpfully, HPE filed a response (20-cv-725, ECF No. 90, "**HPE Response**") indicating that it does "not oppose the requested limited purpose consolidation.  HPE has made a handful of edits to the Proposed Order, attached, to reflect this position and to facilitate the agreed-upon production." *Id.* at p. 2.[3] The "handful of edits" proposed by HPE are all acceptable to the Requesting Non-Parties  *See id.* at ECF No. 90-1 (redline showing HPE's edits to the proposed order granting the Consolidation Motion), ECF No. 90-2 (clean version of the same, suitable for entry by the Court).

---

[2] The moving parties: BP Funding Trust; BasePoint Administrative, LLC; Terrier SSC, LLC; and Aqua Licensing, LLC.  The defendants make various unsupported and incorrect assertions about the relationship of these parties to WSOU and each other.  Notably, the BP entities and Terrier have never been "agents" of WSOU, as ZTE claims incorrectly. ZTE Opp. at p. 1, fn 2.  Further, the BP entities and Terrier are not "related entities" to one another as Google claims incorrectly. Google Opp. at p. 3.  Aqua is accurately described in the motion.  BP Funding Trust (not BasePoint Administrative, LLC, the entity Dell incorrectly subpoenaed) loaned WSOU funds to acquire certain assets.  Terrier later acquired that loan from BP Funding Trust in an arms-length transaction.  The security interests both BP Funding Trust and Terrier previously held in the patents in suit were released by June 2021.

[3] HPE also indicates that it "supports the relief sought by Google" in its three motions to compel, which Google filed in Delaware against Terrier, BP Funding Trust, and Aqua, and which were transferred to this Court, over Google's opposition, per Rule 45(f) (which, together with WSOU's motion for a protective order filed here, constitute the "**Google Motions**").  However HPE adds that it "does not intend to complicate or slow down the proceedings" related to the Google Motions "by submitting any additional briefings on them."  HPE Response at p. 1.

This omnibus reply brief is thus addressed to the arguments of Google, Dell, and ZTE. Simply put, none of the defendants have identified any specific prejudice they would suffer as a result of consolidation. None of them have adduced evidence showing they made much (or, indeed, any) effort to obtain what they wanted directly from the plaintiff, WSOU, prior to burdening third parties with subpoenas. None of them have pointed to any authority suggesting it would be an abuse of discretion for the Court to grant the relief requested. And, somewhat ironically, they make pretty much exactly the same arguments about why their individual subpoenas and circumstances are supposedly unique, which only further underscores that common issues of law and fact abound, such that consolidation is appropriate.

### (a) The Defendants All Fail to Demonstrate Any Prejudice From Consolidation

Notably absent from the oppositions is any discussion of specifics demonstrating how the defendants would purportedly be prejudiced by the requested consolidation. All three of them vaguely assert that they would purportedly be prejudiced.[4] But none of them explain how or why. Dell never explains why the idea that there are purportedly different issues at play in the different cases (which is not correct) adds up to prejudice to Dell. Similarly, Google never explains how cooperating with the other defendants to do a single deposition of Aqua actually adds up to any kind of prejudice to Google (or the others). They will all get to ask their questions. None of them submit a declaration, or even an argument, attesting that it just would not be possible for all of them to agree on a single list of topics and get Aqua, a licensing

---

[4] Google Opp. at pp. 7-8 (arguing that having to cooperate with the other defendants and agree on a single list of deposition topics in deposing Aqua "would prejudice Google, which has its own issues for all three Moving Parties."); Dell Opp. at p. 5 (arguing that "Discovery would not be identical for all of the parties, creating a high risk of prejudice and confusion that is not outweighed by the risk of inconsistent adjudication."); ZTE Opp. at p. 10 (arguing that the requested consolidation "is improper and prejudicial to Defendants for each separate action" but never explaining why).

witness, deposed in a single session of seven hours or less on February 22, 2022; the farthest any of them go is Dell, who calls the goal of such a joint deposition "unrealistic."[5] Asking this group of defense lawyers, from top law firms, who may or may not already be in a joint defense agreement with each other, to cooperate as to a joint deposition of Aqua (or of BP or Terrier, if those are allowed) in fact seems like an entirely *realistic* thing for this group of defense counsel to achieve.[6]

In short, none of the defendants demonstrate that they would be prejudiced by the requested, limited-purpose consolidation.

> **(b)** **Defendants Fail to Establish That They Made a Good Faith Effort to Obtain the Information Sought from WSOU Prior to Burdening the Requesting Non-Parties with Subpoenas, Letters, and Motion Practice**

Also notably missing from the defendants' oppositions is any kind of evidence showing their efforts to obtain the information they are seeking directly from WSOU, prior to barraging the Requesting Non-Parties with subpoenas, meet and confer letters, and motions (both filed, as in the Google cases, and threatened, as with ZTE and Dell's meet and confer letters and emails).

The only defendant that pays any kind of attention to the notion that it should have sought discovery from WSOU prior to burdening non-parties is Dell, but what Dell argues in this regard is, once again, light on specifics and devoid of evidentiary support. After describing its subpoena to Aqua, Dell notes that it "requested similar documents from WSOU, which has failed to

---

[5] Dell Opp. at p. 8.

[6] Typical of the defendants' wishy-washy responses to the requested consolidation is Dell's most-recent pronouncement that it thinks consolidation unnecessary because it has "offered to coordinate depositions or disputes with other cases in the future where practicable." Dell Opp. at pp 1-2. What that sounds like to the Requesting Non-Parties is that Dell actually wants to take its own deposition of Aqua, beyond the one that Google, HPE, and WSOU have agreed can happen on February 22, because Dell is likely going to view its own "future" cooperation as not "practicable" based on issues it might choose to invent related to Aqua's document production, or who knows what else.

produce such documents or confirm whether it is withholding them." Dell Opp. at p. 3.  Similarly, Dell argues that it "has propounded discovery and requested production from WSOU multiple times regarding material relevant to the value of the patents. WSOU has declined or failed to produce such material, including for example the loan agreement with BasePoint, which includes information about the patent portfolio that WSOU offered up as collateral. It is only after Dell requested and failed to receive production from WSOU that Dell resorted to subpoenas." *Id.* at p. 7.

For the record, Dell subpoenaed both Aqua and BasePoint Administrative, LLC *in August of last year.*  Dell fails to adduce any evidence showing that whatever efforts it has purportedly taken to seek similar discovery directly from WSOU occurred *prior* to Dell serving its subpoenas on the Requesting Non-Parties.  Dell attaches no discovery responses from WSOU to its opposition.  It points to no letters from WSOU standing on its objections.  It submits no declarations from counsel for Dell stating when it served its related discovery on WSOU or detailing efforts to confer with WSOU, much less anything establishing that WSOU gave Dell the brush off or by when.  And the loan agreement between WSOU and BP Funding Trust that Dell is complaining about purportedly not having was actually apparently produced to Dell last week by WSOU.  *See* Google Opp. at p. 5 (indicating loan agreement was produced to it by WSOU "two days ago")[7].

Dell argues that the *Genus Lifesciences* case,[8] which was cited in the opening brief (at p. 18) for the proposition that parties seeking discovery should seek it from the other party before burdening third parties, is inapposite because it involved a *motion to quash*, not a motion for a protective order and consolidation, as here.  Why the requirement of making a good faith effort to seek discovery from the other side, before burdening a third party with subpoenas should be

---

[7] As far as counsel for the Requesting Non-Parties is aware, the loan agreement in question would have been produced by WSOU to Dell last week, at the same time it was produced by WSOU to Google.

[8] *Genus Lifesciences v. Lannett Co.*, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019).

any different depending on the precise remedy sought is something Dell never explains. And there is no good reason to make such a distinction. A party should still start by serving discovery on the other side, before burdening a third party with subpoenas, regardless of whether the subpoenaing party finds itself staring down the barrel of a motion to quash or a motion for a protective order (or a request for consolidation under Rule 42). *Cf.* Fed. R. Civ. P. 45(d)(1) ("attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.")

Further, Dell confuses what remedies are in play here. The Requesting Non-Parties moved for a protective order under Rule 26(c) (instead of moving to quash the subpoenas outright under Rule 45[9]), and for partial consolidation under Rule 42(a), not to "consolidate subpoenas under Rule 45" (Dell Opp. at p. 7) as Dell incorrectly argues and which is not a real thing. Mot. Br. at p. 5 (invoking Rule 42 and Rule 26(c) as basis for relief sought); Proposed Order at p. 3 (same).

Google and ZTE, for their parts, make no attempt at all to distinguish *Genus Lifesciences* or to justify their insistence on burdening the Requesting Non-Parties with subpoenas, without first having undertaken a good faith effort to seek the information from WSOU directly. Similarly, the defendants all fail to establish that any of what they want cannot actually be obtained from WSOU and must therefore be sought from the Requesting Non-Parties.

Accordingly, on the present record, in which all of the defendants have failed to demonstrate that they made a good faith effort to seek discovery from WSOU prior to burdening

---

[9] Dell is also incorrect when it argues that the only remedies available under Rule 45 are "sanctions, cost-shifting, or quashing the subpoena". Dell Opp. at p. 7 and fn 3. Rule 45, by its express terms, also allows a Court to "modify" a subpoena (Fed. R. Civ. P. 45(d)(3)), or to "specify conditions as an alternative" (*Id*. at 45(d)(3)(C)). In any event, Rule 26(c), which is what movants invoked, allows both parties and non-parties alike to seek much the same relief.

the Requesting Non-Parties, or that WSOU cannot provide them with what they seek, the Court would be entirely justified in protecting the Requesting Non-Parties as requested in their motion. *See Genus Lifesciences v. Lannett Co.*, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) (quashing non-party subpoena as unduly burdensome where plaintiff failed to first seek the information from the defendant).

### (c) Defendants Marshall No Authority Suggesting it Would be an Abuse of Discretion for this Court to Grant the Relief Requested

Another thing absent from the oppositions is any kind of citation to a case suggesting that entering the Proposed Order (as revised by HPE) would be an abuse of discretion based on the circumstances here.

Dell and Google do not dispute that there are common issues of law and fact here such that consolidation is potentially appropriate, but they argue that the four groups of cases here are supposedly at "different stages of preparedness of trial," which is a factor the Court might consider in exercising its discretion to potentially deny consolidation. *See* Dell Opp. at pp. 4-5 (quoting the standard as set out in *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989)); Google Opp. at p. 7 (*citing* to *Williams v. Bexar Cty.*, No. SA-18-CV-01235-XR, 2021 WL 932044, at *1 (W.D. Tex. Mar. 11, 2021) as "holding [that] a four-month difference in discovery periods differentiated two actions to warrant denial of consolidation.")[10]

---

[10] *Williams* was a Section 1983 case brought by a *pro se* inmate who sent an "untitled" document to the Court after the Court dismissed his Section 1983 claims against the county on summary judgment. *Williams v. Bexar Cty.*, No. SA-18-CV-01235-XR, 2021 WL 932044, at *1 (W.D. Tex. Mar. 11, 2021). In this untitled document, among other things, Williams requested that his Section 1983 action should be "joined" with a section 1983 action brought against the county by another inmate in the Bexar county jail, which the Court "interpret[ed] as a request to consolidate." *Id*. at * 2. There were a lot of reasons Judge Rodriguez denied the consolidation request, including that the nature of the claims were different, and so were the parties, since the county had already been dismissed as a defendant on Williams' section 1983 claims. *Id*. The

9

Even assuming, arguendo and without evidentiary support, that the four groups of cases here are at "different stages of preparedness for trial," that really ought not matter quite so much where, as here, the requested consolidation is not for all purposes including trial, but only for the limited purpose of resolving disputes relating to certain, already-served, nearly-identical third party subpoenas. Further, the fact that the best authority any of the defendants could come up in opposing consolidation is a *pro se* inmate Section 1983 case, in which Judge Rodriguez denied consolidation for multiple good reasons that had nothing to do with "preparedness" is also certainly telling.

ZTE, for its part, willfully misconstrues the meaning of the word "action" as used in Rule 42, and also disputes that there are common issues of law or fact, which are both meritless arguments. ZTE's first argument is that "Without a pending ZTE Motion to Compel of *any* Third-Party, in *any* district court, there is no ZTE action to hitch on the proposed wagon train of consolidation in the WDTX." ZTE Opp. at p. 5 (italics in original). As argued in the motion, the relevant "actions before the court" here, which movants seek to consolidate, are the underlying patent infringement lawsuits filed by WSOU against each of the defendants (as well as the miscellaneous subpoena proceedings). Mot. Br. at p. 1 (identifying the "Cases Proposed for Consolidation" as those actions appearing on the caption page); *see also* Proposed Order at ¶ 1 (same). ZTE made this same argument in one of its myriad meet and confer emails (Pietz Decl., at 531)[11] and was advised then that the relevant "actions" here are the underlying infringement cases such that ZTE's argument was meritless (*id*. at 529) Yet ZTE nevertheless repeated this argument in pleading filed with the Court and signed by counsel.

---

Court also mentioned that "the two actions are at completely different stages of preparedness," and cited the differing pretrial deadlines, as an additional reason to deny consolidation. *Id.*

[11] Unless otherwise indicated, all further references to the "Pietz Decl." refer to the declaration filed in support of the motion; specifically, to the copy filed in 20-cv-473, at ECF No. 146-1, and all page references are to the ECF pagination in the top right of that docket item.

ZTE also argues, in equally unconvincing fashion, that "The only commonality here is that these actions involve the same plaintiff - and same Third-Parties. Similarly worded subpoena discovery requests, viewed in isolation, are an insufficient basis for consolidation." ZTE Opp. at p. 1. Of course this mischaracterization of the record by ZTE ignores the fact that ZTE's subpoenas are *identical* (not merely similar) to the subpoenas served by Google and at issue in the Google Motions. Pietz Decl. ¶¶ 2-3, Exs. 1-2. It also ignores Appendix A to the motion, which demonstrates how all of the defendants have served the Requesting Non-Parties with subpoenas seeking the same information. Mot. Br. at pp. 22-23. Further, ZTE's argument ignores the fact that all of the defendants are trying to depose Aqua (with only some of them agreeing to cooperate in doing so) and that they are all making the same legal arguments about relevance, as argued in the motion brief, and as discussed in Section (d), below.

In short, none of the defendants point to any authority suggesting it would be an abuse of the broad discretion afforded to the Court by Rule 42 and by Rule 26(c) to grant the relief requested. The timing issues Dell and Google focus on (albeit without evidentiary support) do not really matter given the limited scope of the proposed consolidation, and ZTE's arguments are meritless to the point of pushing the bounds of Rule 11.

**(d)     In Trying to Argue That Their Subpoenas and Circumstances are Supposedly Unique, the Defendants Further Underscore That they are all Making the Same Arguments in Support of the Same Discovery**

Google argues that it "stands apart" from the other defendants, purportedly because the Requesting Non-Parties *waived their objections* to the subpoenas, and because BP Funding Trust and Terrier purportedly *agreed to produce documents* before purportedly reneging on the agreement. Google Opp. at pp. 6-7.

Ironically, Dell makes exactly the same two arguments. Dell also argues that BasePoint Administrative purportedly *waived its objections* and that it *agreed to produce* documents. Dell

11

Opp. at p. 1 ("BasePoint did not timely object and originally agreed to provide documents.")  As shown in the moving papers, the "agreement" Dell is saying it had with BasePoint Administrative is the very same agreement Google claims it reached with BP Funding Trust. Mot. Br. at 13; *compare* Pietz Decl. at 589 (**Ex. 15**) (email from J. Kash for Google, to R. Millimet on 10/5/21) *with id*. at 593-94 (**Ex. 16**) (email from R. Millimet to B. Shelton for Dell, on 10/8/21, reciting same numbered list of document categories)

While the factual circumstances are slightly different with respect to whether there was an "agreement" by the BP entities to produce anything (there was one initially in Google, but not in Dell) and whether there was waiver (which the Requesting Non-Parties dispute)[12], the legal issues are exactly the same.[13]

---

[12] Notably, Aqua disputes that it waived any objections with respect to the Google subpoenas. While it is true that Aqua's initial objections focused on the document requests in the document subpoena, Aqua also sent an email generally objecting to a deposition going forward, which is all that was required.  Pietz Reply Decl., **Ex. 19**.  Additionally, BasePoint Administrative disputes that its objections to the Dell subpoena were untimely, in view of discussions in which Dell appeared to have agreed to withdraw its initial subpoena after being informed that it had subpoenaed the wrong entity.  Pietz Reply Decl., **Ex. 20**.  And all of the Requesting Non-Parties argue that even if objections were waived, they should be relieved from waiver under the circumstances (*see* next footnote).

[13] For example, even if objections were technically waived, this Court has authority to look beyond the waiver and consider the propriety of the requests at issue, which is something the Requesting Non-Parties have already argued in their oppositions to the Google Motions (21-mc-1270 at ECF No. 11, pp. 12-13) and which applies with equal force to Dell.  *Accord In re Ex Parte Application of Grupo Mexico SAB de CV for an Ord. to Obtain Discovery for Use in a Foreign Proceeding*, 2015 WL 12916415, at *3 (N.D. Tex. Mar. 10, 2015), aff'd sub nom. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd., 821 F.3d 573 (5th Cir. 2016) (Untimely objections does not bar them, and untimely objections do not prohibit a court from exercising its inherent authority on its own to limit or prohibit improper discovery); *see also Piazza's Seafood World, LLC*, 2011 WL 3664437, at *3 (M.D. La. 2011) ("[I]f aspects of a subpoena are over-broad on their face and exceed the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith, waiver of the non-party's untimely objections is not automatic, and the objections may be considered.")

Similarly, the defendants are all now arguing that the documents they want from BP and Terrier are relevant not just to standing,[14] which was their originally-proffered justification for their fishing expedition[15], but also to damages, which is their new proffered justification. According to ZTE, it "does not seek discovery for standing issues, rather ZTE *is the only Defendant* seeking discovery for damages issues" ZTE Opp. at p. 1 (emphasis in original). As with other things it represents to the Court, ZTE is wrong again here in a way that is easily contradicted by even the most cursory review of the relevant pleadings. Google also argues that the information it seeks is relevant to standing "as well as important damages issues related to the [sic] value and licensing of WSOU's portfolio." Google Opp. at p. 8. Similarly, Dell also claims that "The subpoenas at issue seek information relevant to patent standing and damages." Dell Opp. at p. 5. Although they all trumpet potential relevance to damages issues, none of the defendants articulate what, exactly they think would be relevant or why they cannot get the information they want directly from WSOU.

In short, the arguments the defendants make in their opposition about why they are supposedly special and unique actually just reinforce that they all want the same information, for the same reasons, and that the same legal and factual issues are before the Court in all of these cases.

---

[14] The defendants' contention that documents from BP Funding Trust and Terrier are purportedly relevant *to standing* appears to be a dead-end in view of their failure to establish a predicate fact upon which relevance would depend: namely, that there was some kind of a breach and foreclosure on liens that would have divested WSOU of patent ownership. *See* Pietz Decl. at 518 (noting that none of the defendants were able to identify any such evidence during the meet and confer call). Nor do the defendants point to any such evidence in their briefs. Further, what the discovery matrices and hearing excerpts that WSOU and Microsoft have recently agreed to unseal (Pietz Reply Decl., **Exs. 21-24)** show is that the defendants' speculation is incorrect and that there was never an event of default potentially implicating standing. Pietz Reply Decl**., Ex. 23** at p. 15 (WOSU arguing that "Mr. Shanus' testimony confirms there has been no default and no notice of default under any security agreement. Shanus Depo. 38," and quoting relevant deposition transcript excerpts).

[15] *See, e.g., Google v BP Funding Trust*, 21-mc-1270, ECF No. 1 at p. 3 (Google's motion to compel arguing documents relevant to standing); *id*., ECF No. 14 at p. 1 (Google's reply arguing same).

**(e)     Google Attacks a Straw Man When it Argues the Court Should "Ignore" the Microsoft Proceedings—Proceedings Which Are Relevant to Show that any Delay in Resolution of the Google Motions is the Defendants' Fault**

Google spends a good portion of its brief attacking a straw man. Its first argument against consolidation is that this Court's decision of Microsoft's motion seeking to compel WSOU to produce documents related to BP Funding Trust and Terrier as part of party discovery in the Microsoft cases is a "red herring" that this Court should "ignore." Google Opp. at p. 5.

As an initial matter, Google is wrong when it claims that the Requesting Non-Parties' argument in support of consolidation "depends on the assumption that this Court has already resolved everything in cases before WSOU and Microsoft." Not so. As Google correctly notes, whether these cases ought to be consolidated does not rise or fall on what the *outcome* was in *Microsoft*. The Requesting Non-Parties never argued otherwise; they do not maintain, for example, that the doctrine of issue preclusion bars Google from attempting to relitigate issues previously litigated by Microsoft. On the other hand, having the Court decide the same or similar issues related to the same non-parties twice[16], the first time in *Microsoft*, and again now in connection with the Google Motions, seems like plenty. Accordingly, the Requesting Non-Parties *are* seeking to have Dell, ZTE, and HPE be bound by what the Court decides in connection with the Google Motions, after being given notice and an opportunity to be heard.

That Google continues to maintain the distinctive posture of the ostrich with respect to the *Microsoft* proceedings is hardly surprising given how Google has handled the instant subpoenas from the start. What is surprising though is that Google spills so much ink urging the Court to do the same; none of the "five fatal flaws" Google trumpets in its opposition are fatal to

---

[16] Or, technically, three times, if one counts the hearing on Google's motions to compel that Magistrate Judge Burke conducted in Delaware, before deciding to grant the transfer motion and reserve his ruling on the merits of Google's motions to compel.

anything related to consolidation, and none of them are a sufficient reason that this Court should "ignore" the Microsoft proceedings. The reason the Microsoft proceedings are relevant is not because they were the end of the matter, but rather because they explain why Google acted as it did. As set out in the motion brief, it is plain as day that the whole Delaware detour was an attempted end-run by Google around this Court's authority in general and around its relevant rulings from the *Microsoft* cases in particular. Tellingly, Google never argues otherwise.

Google's second argument illustrates the invalidity of its first. That is, Google's attempt to lay the blame for "delay" at the feet of the Requesting Non-Parties shows why discussion of the *Microsoft* proceedings was indeed relevant and should *not* be ignored by the Court.

It was Google's decision to seek the instant discovery via third-party subpoena instead of directly from WSOU. It was Google's decision to file its motions to compel in Delaware, not here. It was Google's decision to oppose the Rule 45(f) transfer. Finally, Google's complaint about the "month of meeting and conferring" the parties went through prior to the Consolidation Motion being filed would be better directed to ZTE, Dell, and, to a lesser extent, HPE. Even though all of them may or may not be in a joint defense agreement with each other (and with Microsoft),[17] when the Requesting Non-Parties broached consolidation, what happened was that ZTE and Dell fairly transparently tried to slow-play things, while Google simultaneously tried to step on the gas for it and HPE. *See* Pietz Decl. at pp. 504-587. If the process of conferring on the Motion for Consolidation took longer than it might have, that was because the defendants

---

[17] *See* Pietz Decl., ¶ 12, and at 518 (email summarizing final meet and confer call: "In response to counsel for Dell's comment that "we are doing our own thing," I asked you all to confirm that Google, Dell, ZTE, and HPE are in a joint defense agreement. Counsel for Dell responded that was "not something we are going to discuss today").

15

mightily resisted providing their final answer as to whether they would agree to some or all of the proposed order that the Requesting Non-Parties first circulated on January 6, 2022.

Google claims it "urgently" needs documents related to the Requesting Non-Parties. Yet it fails to establish the factual basis for urgency. Which is because there is no urgency. Moreover, Google could have avoided timing issues altogether if it had simply filed a motion to compel against WOSU in this Court back in October, instead of embroiling the Requesting Non-Parties in the Delaware detour and subsequent motion practice.

**(f)     ZTE's Argument that the Requesting Non-Parties Purportedly Failed to Properly Meet and Confer is Belied by Extensive Evidence to the Contrary and its Insistence that it is Going to Double Down and Repeat Google's Delaware Detour Proves That Consolidation is Warranted**

Beyond pretending that "action" really means "motion to compel" for purposes of Rule 42, and representing that none of the defendants argue relevance based on damages when they all do, ZTE's other two main arguments are that the Requesting Non-Parties supposedly failed to properly meet and confer and that they are engaged in "forum manipulation."

ZTE's argument that the Requesting Non-Parties failed to properly meet and confer is both ironic given ZTE's repeated refusal to join a meet and confer phone call and plainly wrong based on the extensive evidence attached to the motion. ZTE argues as follows,

> "the Third-Party motion has no certificate of conference (as required). The Third-Parties' failure to properly meet and confer with ZTE, and the further failure to certify that they met in 'good faith' to 'resolve the dispute without court action,' is also reason enough to deny the consolidation." ZTE Opp. at p. 6.

Google, in its brief, complains about the delay occasioned by what it describes as the "month of meeting and conferring" that Requesting Non-Parties engaged in prior to filing this motion. Google Opp. at p. 4. Which makes ZTE's argument that there was allegedly any failure to properly meet and confer all the more confounding.

16

Given the repeated refusal of ZTE's counsel to participate in a meet and confer phone call, it is a bit surprising that ZTE would be asking the Court to pay close attention to the small mountain of meet and confer emails (Pietz Decl. at pp. 504-587) that were exchanged before this motion was filed. However, that is what ZTE argued, so here is a summary of the Requesting Non-Parties' extensive efforts to meet and confer, which is probably more detail than anyone needs or wants:

(a) On 12/18/21, ZTE's counsel insisted that it would only agree to cooperate with Google in deposing Aqua if Aqua, BP Funding Trust, and Terrier all first agreed to drop all of their "non-privilege" objections to the subpoenas. Pietz Decl. at 510.

(b) On 1/6/22, counsel for the Requesting Non-Parties ("**RNPs**") circulated the instant proposed order, and a copy of their local counsel Dan MacLemore's 12/22/21 letter to the Court re: scheduling of the Google Motions, to counsel for all the relevant defendants including ZTE. *Id*. at 552 ( counsel for the RNPs: "Please advise as to your clients' positions. I am available to meet and confer with each of you this week.")

(c) 1/6/22, counsel for ZTE responded right way, demanding "immediate correction" of purported misstatements in Mr. MacLemore's 12/22/21 letter to the Court (Mr. MacLemore's letter was accurate) and insisting that ZTE would procced on any motion it planned to file in Delaware. *Id.* at 509 (ZTE's initial emails), at 505-508 (RNPs responses; back and forth), at 504 (ZTE insisting that if it moves to compel it will do so in Delaware).

(d) Between January 6, 2022, when the proposed consolidation order was first circulated to all defendants, and January 21, 2022, when the instant motion was filed, counsel for the RNPs sent 18 emails (**!**) trying to goad the various defendants, including especially ZTE, to properly confer about the motion by participating in a meet and confer phone call. *Id*. at pp. 507, 505, 552, 550, 548, 547, 546, 544, 537, 536, 532, 529 (RNPs to Mr. Lavenue: "Your actions in refusing to confer or agree to basic things like a briefing schedule are not consistent with your duty under Rule 45 to minimize burdens on non parties. Or with 28 USC 1987 for that matter"), 525, 524, 522, 521, 519, 517.

(e) During that same time period, *counsel for ZTE*, Mr. Lavenue, sent 10 emails back in response, but ***never agreed to participate in a meet and confer phone call***. *Id*. at pp. 509 (x2), 506, 505, 504, 538, 531, 526, 525, 523. Generally, Mr. Lavenue insisted that he wanted a written response by the RNPs to Delaware district court orders he had cited in a prior meet and confer letter, as a pre-condition for joining a meet and confer call. *Id.* at pp. 531, 526, 525, 523 ("Once you send us the legal support for your positions (as ZTE requested), then we can schedule a call.")

17

    (f) Rather, on the final meet and confer phone call conducted on January 20, 2022, counsel for ZTE, Mr. Schulz, surprisingly joined the call (without confirming ahead of time to the RNPs that ZTE planned to do so), whereupon Mr. Schulz attempted again to hi-jack the conversation about the propriety of consolidation into a discussion of Delaware district court orders that ZTE thinks important to the merits of its discovery requests.[18] *See id.* at 517-18.

    (g) As noted in the motion, as of 7:30 p.m. Central Time the evening the motion was filed, ZTE never did respond to the RNPs repeated requests that ZTE reduce its final position to writing. *See* Mot. Br. at p. 15 *citing* Pietz Decl. ¶ 12.[19]

    (h) ZTE did finally respond to the request to reduce its position to writing, after filing of the motion was already underway, on Friday night January 21. Pietz Reply Decl., **Ex. 18**. In this email, ZTE took the position that in view of mandamus briefing to the Federal Circuit "in the unlikely event that ZTE remains in the WDTX in the near future, it is our position that ZTE *should not* be included in any further discovery rulings in the WDTX until the CAFC resolves the venue issues."

The Pietz Declaration submitted with the motion, detailing the above extensive efforts to try and meet and confer, the mountain of meet and confer emails filed with the court, and the three separate meet and confer phone calls conducted (the defendants never would agree to get on the phone at the same time), which are described in the declaration, all suffices for purposes of Local Rule CV-7(G)'s conference requirement.

In short, ZTE's 'failure to meet and confer argument' is meritless, and, as Queen Gertrude said in *Hamlet*, "methinks the lady doth protest too much."

Finally, given ZTE's insistence on potentially moving to compel on its subpoenas, which are *identical* to the subpoenas before the Court in the Google Motions, by forcing another round

---

[18] The RNPs repeatedly invited ZTE to argue anything it wanted related to these Delaware district court orders that it thinks important the brief in support of Google's position that the RNPs invited ZTE (and the other defendants) to file, and promised they would respond to all such arguments. *See* Pietz Decl. at 518 (promising to address ZTE's Delaware district court orders), *id.* at 534 (proposed briefing schedule defendants ever responded to). Only Dell has expressed an interest in filing a brief in support of Google's position (*id.* at 515) , but it has not actually done so yet and neither have any of the other defendants.

[19] The Pietz Declaration incorrectly stated the date the motion was filed as January 22, 2022. It was filed Friday evening January 21, 2022.

18

of motions (including another motion to transfer under Rule 45(f)) in Delaware, and also perhaps yet even a further round of proceedings in a proposed transferee court in the event mandamus is granted, the Requesting Non-Parties leave it to the Court to determine who it thinks is engaging in "forum manipulation," as ZTE accuses movants of doing (ZTE Opp. at p. 8).[20]

Although there are a lot of other good reasons to do so, consolidation should be granted here if for no other reason than to prevent ZTE from haling the Requesting Non-Parties into Delaware again (or into another transferee court after that, possibly), as ZTE continues to insist it is reserving the right to do.

### (g) Conclusion

For the foregoing reasons, the Requesting Non-Parties respectfully request that the Court grant the instant motion and enter the version of the proposed order that contains the edits from HPE (*i.e.*, the clean version filed in 20-cv-725 at ECF No. 90-2).

---

[20] Although it is unclear if the Requesting Non-Parties have standing to do so, they note for the record that they object to ZTE's cases being transferred to another district, as that occurring would be prejudicial to the Requesting Non-Parties in the event that the instant requested consolidation were granted.

Respectfully submitted,

DATED: February 4, 2022

BY:

| | |
|---|---|
| */s/ Morgan E. Pietz* | */s/ Dan N. MacLemore* |
| **PIETZ & SHAHRIARI, LLP** | **BEARD KULTGEN BROPHY** |
| Morgan E. Pietz (CA Bar No. 260629)[21] | **BOSTWICK & DICKSON, PLLC** |
| Morgan@pstrials.com | |
| 6700 S. Centinela Ave., 2nd Floor | Dan N. MacLemore |
| Culver City, CA 90230 | State Bar No. 24037013 |
| (310) 424-5557 | 220 South 4th Street |
| | Waco, Texas 76701 |
| | Tel (254) 776-5500 |
| | Fax (254) 776-3591 |
| | maclemore@thetexasfirm.com |

*Counsel for the Requesting Non-Parties*

---

[21] Admitted *pro hac vice* in case numbers: 6:21-mc-01269-ADA, 6:21-mc-01270-ADA, and 6:21-mc-01309-ADA. Application for general admission to Western District of Texas pending.